IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION

| | | |
|---|---|---|
| DANNY HERMAN TRUCKING, INC. | § | |
|     *Plaintiff,* | § | |
| | § | |
| vs. | § | PE:21-CV-00043-DC-DF |
| | § | |
| LILIANA MIRANDA A/K/A LILI MIRANDA, | § | |
| and CATALINA VILLEGAS DE CARRILLO, | § | |
|     *Defendants.* | § | |

**REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE**

TO THE HONORABLE DAVID COUNTS, U.S. DISTRICT JUDGE:

BEFORE THE COURT is Defendant Catalina Villegas de Carrillo's ("Villegas") Motion to Dismiss for Failure to State a Claim, Pursuant to Rule 12(b)(6) (hereafter, "Motion to Dismiss") (Doc. 6), and Motion for Judgment Pursuant to Rule 12(c) (hereafter, "Motion for Judgment") (Doc. 6). This matter is before the undersigned United States Magistrate Judge through a standing order of referral pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration, the undersigned **RECOMMENDS** that Villegas's Motion to Dismiss be **DENIED**. (Doc. 6). Additionally, the undersigned **RECOMMENDS** that Villegas's Motion for Judgment be **DENIED**. (Doc. 6).

**I. B**ACKGROUND

This case's genesis is a motor vehicle collision. Plaintiff Danny Herman Trucking, Inc. ("Danny Herman"), alleges that on or around May 30, 2021, Defendant Liliana Miranda a/k/a Lili Miranda ("Miranda") was driving a Honda CR-V sports utility vehicle which was owned at all relevant times by Villegas. (Doc. 1 at 1). Miranda allegedly ventured on a road trip from Texas to Arizona, which Danny Herman asserts would have taken twenty-four hours to complete at appropriate speed limits without any detours. *Id.* at 1–2. At some point during this road trip, due to

allegedly "bald" tires, Miranda lost control of the Honda CR-V. *Id.* at 2. The Honda CR-V was purportedly stopped in such a "precarious position" that the headlights "were facing south and could not have been seen" by Bradley Johnson ("Johnson"), who was operating one of Danny Herman's tractor-trailers. *Id.* Johnson's tractor-trailer impacted the Honda CR-V, leaving both vehicles to come to rest on the shoulder of Interstate 10. *Id.* at 2–3. Another commercial tractor-trailer, driven by Rigoberto L. Villalobos, collided with Johnson's tractor-trailer, resulting in an explosion and fire which ultimately led to Johnson's death. *Id.* at 3.

Danny Herman's tractor-trailer and other related equipment, as operated by Johnson at the time of the collision, were "damaged and consumed in fire[,] resulting in a total destruction of those units and the cargo being carried in the trailer." *Id.* at 3. Danny Herman claims that the damages exceed $75,000, and brings this suit under the Court's diversity jurisdiction. *Id.* at 3, 4. Although Danny Herman uses "entrustment" language in its Original Complaint, Danny Herman has clarified that its claims as against Villegas amount to "negligent maintenance" instead of "negligent entrustment." *Id.* at 2; (Doc. 9 at 4–6). Specifically, Danny Herman alleges that the "tires on the Honda CR-V were 'bald' and a very basic visual inspection of the said tires would have led any reasonable and prudent person to realize the subject vehicle was unsafe to drive on a public highway." (Doc. 1 at 1).

On September 27, 2021, Villegas filed her combined Motion to Dismiss and Motion for Judgment, claiming that Danny Herman "wholly failed to allege that Miranda was an unlicensed, incompetent, or reckless driver" or that Villegas "knew or should have known that Miranda was an unlicensed, incompetent, or reckless driver." (Doc. 6 at 4–5). Danny Herman filed a response to the motions on October 11, 2021, providing the perspicacity that "this is not an instance of negligent entrustment, but rather a common law negligence claim," as well as lodging attacks against the timeliness of Villegas's motions. (Doc. 9 at 2). Villegas then filed a Reply to Danny Herman's response on October 12, 2021, countering Danny Herman's assertion of untimeliness as well as

Danny Herman's formulation of negligent maintenance. (Doc. 10). Accordingly, this matter is now ripe for disposition.

## II. LEGAL STANDARD

A.  *Federal Rule 12(b)(6)*

When a defendant files a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the trial court must assess whether a complaint states a plausible claim for relief. *See Raj v. La. State Univ.*, 714 F.3d 322, 329–30 (5th Cir. 2013) (citing *Bass v. Stryker Corp.*, 669 F.3d 501, 506 (5th Cir. 2012)). The court must accept "all well-pleaded facts in the complaint as true and viewed in the light most favorable to the plaintiff." *See id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On the other hand, if the complaint only offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," dismissal is appropriate. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Shaw v. Villanueva*, 918 F.3d 414, 415 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). The court should dismiss a complaint if the court can only infer the mere possibility of misconduct, or if the plaintiff has only alleged that he is entitled to relief rather than stating a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678–79 (quoting *Twombly*, 550 U.S. at 570).

B.  *Federal Rule 12(c)*

Federal Rule of Civil Procedure 12(c) provides the following: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "A motion for judgment on the pleadings, like a motion for summary judgment, should be granted only if there is no issue of material fact and if the pleadings show that the moving party is entitled to prevail as a matter of law." *Greenberg v. Gen. Mills Fun Grp., Inc.*, 478 F.2d 254,

256 (5th Cir. 1973). As such, motions made under Federal Rule 12(c) are "designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). Courts review a Federal Rule 12(c) motion for judgment on the pleadings under the same standards as a Federal Rule 12(b)(6) motion to dismiss for failure to state a claim. *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, -- F.4th -- , 2022 U.S. App. LEXIS 287, at *5, 2022 WL 43170, at *2 (5th Cir. Jan. 5, 2022) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

### III. DISCUSSION

In Villegas's motions, the arguments for which are the same given that Villegas filed both the Motion to Dismiss and Motion for Judgment in a unitary document, Villegas argues that dismissal is proper for two reasons. (Doc. 6). First, Villegas notes that, construed as a petition advancing claims based upon negligent entrustment, the Original Complaint insufficiently pleads the elements of negligent entrustment as recognized under Texas state law. (Doc. 6 at 4–5). Second, in her Reply to Danny Herman's response, Villegas offers an additional set of arguments countering the supposed "negligent maintenance" theory articulated in Danny Herman's response to the motions. (Doc. 10). In pertinent part, Villegas surmises that Danny Herman's complaint does not utilize such keywords as "maintenance" or "maintain," and that therefore "no factual assertions [have been made] whatsoever to state a plausible claim" for negligent maintenance. *Id.* at 2–3. Furthermore, Villegas questions the viability of a "negligent maintenance" cause of action under Texas law for a "co-owner of a personal vehicle." *Id.* at 3.

Danny Herman's response to Villegas's motions quash any presumed theory of negligent entrustment as a cause for relief. (Doc. 9). In particular, Danny Herman notes that the claim asserted against Villegas is instead one premised upon common law negligence, constituting in this case a negligent maintenance claim. *See id.* at 2. Accordingly, the undersigned will not consider Villegas's

4

arguments addressing negligent entrustment, and will instead construe the Original Complaint as asserting a common law negligence claim against Villegas for the negligent maintenance of the Honda CR-V involved in the collision.

    A. *Timeliness of Villegas's Motions*

At the outset in its response, Danny Herman asserts that Villegas's motions are untimely. Specifically, Danny Herman claims that, since Villegas was served with the Original Complaint on July 6, 2021, the Federal Rule 12(b)(6) Motion to Dismiss along with her answer to the Original Complaint were due on July 27, 2021. (Doc. 9 at 4). As to the Motion for Judgment, Danny Herman insists that because "this Court has not entered a Scheduling Order," the pleadings have not yet been closed, and therefore a motion made pursuant to Federal Rule 12(c) is premature. *Id.*

        a. *Motion to Dismiss*

The Federal Rules of Civil Procedure provide that any motion made pursuant to Federal Rule 12(b) "must be made before pleading if responsive pleading is allowed." FED. R. CIV. P. 12(b). Federal Rule 12(a)(1) allocates a twenty-one-day timeframe for a defendant to file an answer or Federal Rule 12(b) motion—i.e., a responsive pleading—following service of the summons and complaint. *Hydradyne, LLC v. McCurdy*, No. 2:13-CV-748-JRG, 2013 U.S. Dist. LEXIS 195267, at *3, 2013 WL 12134083, at *1 (E.D. Tex. Dec. 3, 2013) ("The deadlines imposed in [Federal] Rule 12(a) apply to pleadings in response, whether it is an answer or a [Federal Rule] 12(b) motion."); FED. R. CIV. P. 12(a)(1). Thus, a Federal Rule 12(b) motion must be made within twenty-one days of service, and concurrently with *or before* the party's answer is filed. *See Gen. Elec. Co. v. West Feliciana Parish Hosp. Serv. Dist. No. 1*, No. 16-449-JWD-RLB, 2016 U.S. Dist. LEXIS 164214, at *11 n.3, 2016 WL 7007504, at *4 n.3 (M.D. La. Nov. 29, 2016) ("Under Federal Rule . . . 12(a)(1), Defendant would have been required to file its Answer within twenty-one days if Plaintiff had not requested a waiver of service of summons.").

Contrary to what Danny Herman argues in his response, "courts do not mechanically or routinely deny any motion made after a responsive pleading as untimely." *Round Rock Indep. Sch. Dist. v. Amy M*, 540 F. Supp. 3d 679, 693 (W.D. Tex. May 19, 2021) (citing *Puckett v. United States*, 82 F. Supp. 2d 660, 663 (S.D. Tex. 1999), *aff'd sub nom. Puckett v. C.I.R.*, 213 F.3d 636 (5th Cir. 2000)). Even though a motion to dismiss advanced under Federal Rule 12(b) may be untimely, "that alone does not necessarily waive all defenses under [Federal] Rule 12(b)," including Federal Rule 12(b)(6) motions to dismiss for failure to state a claim upon which relief can be granted. *Hydradyne*, 2013 U.S. Dist. LEXIS 195267, at *3–*4, 2013 WL 12134083, at *2.

Here, the undersigned finds that the Motion to Dismiss was untimely filed. Danny Herman claims that Villegas was served on July 6, 2021. (Doc. 9 at 4). However, the proof of service Danny Herman provided the Court indicates that Villegas was in fact served on June 29, 2021, with the proof of service being completed on July 6, 2021. (Doc. 12-1 at 2). The disparity of the precise service date as between the two purported days is inconsequential; even presuming the latest service date of July 6, 2021, Villegas per Federal Rule 12(a)(1) was required to file an answer or other responsive pleading by July 27, 2021, in order to avoid the entry of default judgment. *West Feliciana Parish Hosp.*, 2016 U.S. Dist. LEXIS 164214, at *11 n.3, 2016 WL 7007504, at *4 n.3. Nevertheless, Villegas filed her Answer, along with her Motion to Dismiss, on September 27, 2021. (Docs. 6, 7). The record does not indicate and the parties to not implicate that Villegas filed a waiver of service to allow her to utilize the sixty-day timeframe offered by Federal Rule 4(d). *See United States v. City of New Orleans*, No. 12-2011, 2013 U.S. Dist. LEXIS 58684, at *10 n.3, 2013 WL 1767787, at *3 n.3 (E.D. La. Apr. 24, 2013) (finding a motion untimely even after presuming the inapplicable sixty-day timeframe). These pleadings were clearly filed far beyond even the most forgiving deadline of July 27, 2021, and accordingly are untimely.

While the undersigned recognizes that the Motion to Dismiss is untimely on a technicality, the undersigned is equally cognizant of the Court's overriding paramount interest in making every

effort to address the merits of lawsuits filed to the greatest extent possible. *See* 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2021) (remarking on the "federal rule policy of deciding cases on the basis of the substantive rights involved rather on technicalities").[1]

In this case, Villegas's answer, as noted above, was due at the latest by July 27, 2021; it was only filed two months later in September. (Docs. 7, 12). Villegas never sought an extension of time during which she could file a responsive pleading, whether an answer or her Motion to Dismiss. Villegas accordingly committed a "procedural *faux pas*"; however, this error is not fatal. *See Delhomme v. Caremark Rx, Inc.*, 232 F.R.D. 573, 576 (N.D. Tex. 2005). Considering the overarching Court policy of making a genuine effort to decide cases based upon their substance as opposed to dismissing them on technical failures, the undersigned finds that the lenience generally granted is warranted here.[2] *See McCullough v. Tex. Dep't of Fam. & Protective Servs.*, No. H-17-83, 2017 U.S. Dist. LEXIS 115306, at *7, 2017 WL 3129982, at *3 (S.D. Tex. May 31, 2017) (understanding that "[j]udicial economy favors the early consideration of . . . legal issues" which "would have to be

---

1. Danny Herman does not explicitly argue that Villegas has waived her ability to present a Federal Rule 12(b)(6) argument, but the undersigned believes the issue worth a cursory discussion. Although "[i]t should be apparent to all defendants that the Federal Rules require some response within the twenty-one days provided for an answer," the late-filed Motion to Dismiss does not waive the Federal Rule 12(b)(6) defense of plaintiff's failure to state a claim upon which relief can be granted. *See Hydradyne*, 2013 U.S. Dist. LEXIS 195267, at *5, 2013 WL 12134083, at *2. Therefore, Villegas's failure to timely file her Motion to Dismiss does not reflect a waiver of the arguments within it which are based upon Federal Rule 12(b)(6).
2. Even if a Federal Rule 12(b)(6) motion is deemed untimely, the Fifth Circuit "permits courts to construe an untimely [Federal Rule] 12(b)(6) motion—i.e., a [Federal Rule] 12(b)(6) motion filed after an answer—as a motion for judgment on the pleadings under Federal Rule . . . 12(c)." *Roberts v. Baptist Healthcare Sys., LLC*, No. 1:20-CV-92, 2020 U.S. Dist. LEXIS 224090, at *6, 2020 WL 7042965, at *2 (E.D. Tex. Nov. 30, 2020) (citing *Griffin v. Am. Zurich Ins. Co.*, 697 F. App'x 793, 797 (5th Cir. 2017), *cert. denied*, 140 S. Ct. 840 (2020)). The undersigned is mindful that, given its technical untimeliness, the Motion to Dismiss could be treated as a motion for judgment on the pleadings under Federal Rule 12(c). *Accord United States v. City of New Orleans*, No. 12-2011, 2013 U.S. Dist. LEXIS 58684, at *10–*11, 2013 WL 1767787, at *3 (E.D. La. Apr. 24, 2013) (treating a Federal Rule 12(b)(6) motion, filed along with an answer two months past the responsive pleading deadline, as a Federal Rule 12(c) motion); *Roberts*, 2020 U.S. Dist. LEXIS 224090, at *8, 2020 WL 7042965, at *3 (acknowledging the same). However, since Villegas has filed the instant Motion for Judgment pursuant to Federal Rule 12(c), the undersigned finds that this is unnecessary, as the framework for each motion—that of Federal Rule 12(b)(6) and Federal Rule 12(c)—is identical. *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, -- F.4th -- , 2022 U.S. App. LEXIS 287, at *5, 2022 WL 43170, at *2 (5th Cir. Jan. 5, 2022) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

resolved at some point in the litigation, whether raised in a [Federal] Rule 12(b) motion, a [Federal] Rule 12(c) motion, or a [Federal] Rule 56 motion"), *report and recommendation adopted*, No. H-17-83, 2017 U.S. Dist. LEXIS 114168, 2017 WL 3129810 (S.D. Tex. July 21, 2017). The undersigned concludes that, although the Motion to Dismiss is technically untimely, the judicial hesitation from dismissing untimely motions to dismiss as improper warrants analyzing the Motion to Dismiss as though it were timely filed. Therefore, for the purposes of this Report and Recommendation, the Motion to Dismiss will be regarded as timely filed, and accordingly, the merits of the Motion to Dismiss will be examined.[3]

### b. Motion for Judgment

Villegas, in the same filing as her Motion to Dismiss, includes a Motion for Judgment. (*See* Doc. 6). The purported Motion for Judgment appears to be a motion-in-the-alternative, premised upon identical arguments as those presented in the Motion to Dismiss. *See generally id.* at 5–6 (delineating the standard of review for Federal Rule 12(c) motions); *see also Middaugh v. Interbank*, 528 F. Supp. 3d 509, 530 (N.D. Tex. 2021) (addressing a Federal Rule 12(b)(6) motion to dismiss and a contingent Federal Rule 12(c) motion for judgment on the pleadings). Nevertheless, Danny Herman propounds the position that the Motion for Judgment is untimely as well, but under the divergent theory that a motion made pursuant to Federal Rule 12(c) is premature. (Doc. 9 at 4).

Federal Rule 12(c) allows a party to move for judgment on the pleadings only "[a]fter the pleadings are closed." FED. R. CIV. P. 12(c). The pleadings are considered closed "for the purposes of a [Federal] Rule 12(c) motion 'upon the filing of a complaint and an answer (absent a court-ordered reply), unless a counterclaim, crossclaim, or third-party claim is interposed.'" *LeCroy v. Canon*

---

3. Federal courts often treat motions made pursuant to Federal Rule 12(b)(6) which would otherwise be untimely as timely filed. *See, e.g.*, *Reeves v. Wells Fargo Bank, N.A.*, No. EP-13-CV-318-DCG, 2014 U.S. Dist. LEXIS 195136, at *7 n.2, 2014 WL 12492038, at *3 n.2 (W.D. Tex. Apr. 14, 2014) (collecting cases); *Palomino v. Wells Fargo Bank, N.A.*, No. 6:15-CV-00375-RWS-KNM, 2017 U.S. Dist. LEXIS 36166, at *4–*5, 2017 WL 989300, at *2 (E.D. Tex. Feb. 17, 2017), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 35987, 2017 WL 978930 (E.D. Tex. Mar. 14, 2017).

*U.S.A., Inc.*, No. 1:21-CV-035-H, 2021 U.S. Dist. LEXIS 106872, at *6, 2021 WL 2338862, at *3 (N.D. Tex. June 8, 2021) (quoting *Mandujano v. City of Pharr*, 786 F. App'x 434, 436 (5th Cir. 2019)); *see also* WRIGHT & MILLER, *supra*, § 1367. However, so long as the Court rules on an untimely Federal Rule 12(c) motion *at a time when pleadings have closed*, the Court's consideration can be considered timely. *See Mandujano v. City of Pharr*, 786 F. App'x 434, 436 (5th Cir. 2019).

In this instance, the undersigned concludes that the Motion for Judgment is untimely as a matter of temporal assessment, but that it does not require denial outright based upon this mere technicality. First, no scheduling order has been issued by the Court for this case. Second, Villegas has not asserted any claim against Danny Herman which would prevent the pleadings from being closed. Furthermore, as noted above, Villegas's answer was due July 27, 2021, at the latest; Villegas filed her Answer on September 27, 2021, on the same day as the Motion for Judgment. (Docs. 6, 7). While the Answer was docketed just before the Motion for Judgment, September 27 marked the closure of pleadings, and therefore, the Motion for Judgment was not filed *after* pleadings closed. *But see generally Mumpuku v. Neal*, No. 4:18-cv-00785, 2019 U.S. Dist. LEXIS 206858, 2019 WL 6465315 (E.D. Tex. Dec. 2, 2019) (utilizing Federal Rule 12(c) to adjudicate a motion for judgment on the pleadings which was filed on the same day as the defendant's answer). Nonetheless, the undersigned finds that requiring the Motion for Judgment to be filed on September 28, 2021, a mere day after the closing of pleadings on September 27, 2021, would be antithetical to the purposes of Federal Rule 12(c). *See LeCroy*, 2021 U.S. Dist. LEXIS 106872, at *6–*7, 2021 WL 2338862, at *3 ("[D]elaying the filing of a motion for judgment on the pleadings to [a later date] would not promote judicial efficiency contemplated by [Federal Rule 12(c)]."); *but see Am. Const. Benefits Grp., LLC v. Zurich Am. Ins. Co.*, No. 3:12-CV-2726-D, 2013 U.S. Dist. LEXIS 60308, at *4 n.3, 2013 WL 1797942, at *1 n.3 (N.D. Tex. Apr. 29, 2013) (refusing to consider a Federal Rule 12(c) motion because an answer had not been filed and the pleadings not yet closed).

This case presents the rather unique instance of the answer being filed on the same day, but docketed immediately after the Motion for Judgment. (*See* Docs. 6, 7). Here, given the identical analyses yielded by the indistinguishable standards of review, the undersigned believes it is unnecessary to designate the Motion for Judgment as either a Federal Rule 12(b)(6) or a Federal Rule 12(c). *See Al Rushaid v. Nat'l Oilwell Varco, Inc.*, No. H-11-3390, 2012 U.S. Dist. LEXIS 76237, at *11–*12, 2012 WL 1981990, at *4 (S.D. Tex. June 1, 2012) (neglecting to offer an express designation since the motion was "ripe for review, despite its procedural quirks"). Thus, Villegas's arguments will be considered under the singular standard regardless of which Federal Rule 12 subsection is applied.[4]

### B. Federal Rule 12 Analysis

#### a. Motion to Dismiss versus Motion for Judgment

Regardless of whether the Motion to Dismiss is considered untimely, and would therefore be construed as a Federal Rule 12(c) motion,[5] Villegas has moved in the alternative for judgment on the pleadings. (*See generally* Doc. 6). As stated above, the Motion for Judgment is technically untimely, but will nevertheless be evaluated for the purposes of this Report and Recommendation.

When a court looks to matters or documents beyond the pleadings in considering a motion brought under Federal Rule 12(b)(6) or Federal Rule 12(c), "the motion must be treated as one for summary judgment under [Federal] Rule 56." FED. R. CIV. P. 12(d); *see also Kohn v. H.S. Crocker Co.*, 260 F.2d 790, 792–93 (5th Cir. 1958). In doing so, "all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Greenway v. Wilkie*, No. H-18-

---

4. Because Federal Rule 12(c) motions are reviewed under the same standard as Federal Rule 12(b)(6) motions when only the pleadings are considered, untimely Federal Rule 12(c) motions can still be evaluated even while the pleadings have not yet closed. *See, e.g.*, *MacFadden v. GMAC Mortg., LLC*, No. 2:13-CV-91, 2013 U.S. Dist. LEXIS 77414, at *4–*5, 2013 WL 2422579, at *2 (S.D. Tex. June 3, 2013) (applying the Federal Rule 12(b)(6) analysis to an untimely Federal Rule 12(c) motion).
5. Because the document containing the Motion to Dismiss also incorporates the alternative Motion for Judgment, with no additional arguments presented, an analysis of the Motion to Dismiss under the Federal Rule 12(c) standard would yield the same conclusions as above under the general Federal Rule 12 standard. (*See generally* Doc. 6).

3776, 2019 U.S. Dist. LEXIS 24897, at *2–*3, (S.D. Tex. Feb. 15, 2019) (alteration omitted) (quoting FED. R. CIV. P. 12(d)); *see also Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 440 n.4 (5th Cir. 2015).

In this case, Villegas "did not present to the Court any matters outside the pleadings in support of its [Federal] Rule 12(b)(6) and [Federal] Rule 12(c) motions." *Middaugh v. Interbank*, 528 F. Supp. 3d 509, 535 (N.D. Tex. 2021). Thus, the undersigned has not considered any matter or argument external to pleadings, leaving no basis for converting the Motion for Judgment into a motion for summary judgment. *See id.* (citing FED. R. CIV. P. 12(d)). Accordingly, the Motion for Judgment will be evaluated in tandem with the Motion to Dismiss, utilizing the Federal Rule 12(b)(6)/Federal Rule 12(c) unified framework. *Accord Tristan v. Socorro Indep. Sch. Dist.*, 902 F. Supp. 2d 870, 873 n.5 (W.D. Tex. 2012).[6]

### b. Analysis

Villegas's Motion to Dismiss and accompanying Reply argue in part that Danny Herman has failed to state a claim for negligent entrustment because the Original Complaint does not sufficiently plead negligent entrustment as recognized by Texas state law. (Doc. 6 at 4–5). Alternatively, Villegas insists that Danny Herman's purported negligent maintenance claim is also inadequate because the Original Complaint does not incorporate such keywords as "maintain" or "maintenance," thereby precluding a sufficient factual basis for negligent maintenance, and that Danny Herman failed to demonstrate that a "co-owner of a personal vehicle" has a discernible duty to maintain said vehicle. (Doc. 10 at 2–3). As noted above, Danny Herman has conceded that there is no negligent entrustment claim advanced against Villegas in this case. (Doc. 9 at 5–6). Therefore, only the arguments concerning negligent maintenance will be considered.

---

6. In the following analysis, the term "Motion to Dismiss" will be employed to encompass both the Motion to Dismiss as well as the Motion for Judgment. (Doc. 6).

In Texas, there appears to be no distinct cause of action for negligent maintenance. Instead, Texas state courts tend to review negligent maintenance claims under the framework of common law negligence. *See Sanchez v. Swift Transp. Co.*, No. PE:15-CV-00015-RAJ, 2016 U.S. Dist. LEXIS 192553, at *11 n.1, 2016 WL 10587127, at *4 n.1 (W.D. Tex. Oct. 3, 2016) ("Texas courts do not recognize the elements of an independent negligent maintenance cause of action . . . [therefore, the] assertion of negligent maintenance is nothing more than a direct liability claim . . . for ordinary negligence.").[7] A claim for common law negligence in Texas requires three main elements: "a legal duty, a breach of that duty, and damages proximately caused by the breach." *Le v. Shamblin*, No. 10-21-00105-CV, 2021 Tex. App. LEXIS 7975, at *3, 2021 WL 4462519, at *2 (Tex. App.—Waco Sept. 29, 2021, no pet) (mem. op.). Proximate cause itself is comprised of two sub-elements, factual causation and foreseeability. *Western Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005). In sum, to successfully plead a negligence cause of action, a plaintiff must claim that a defendant's breach of a legal duty caused the plaintiff damages. *Praesel v. Johnson*, 967 S.W.2 391, 394 (Tex. 1998).[8]

In the Original Complaint, Danny Herman alleges that Villegas owed "a duty to the public" to maintain the Honda CR-V as a "reasonable and prudent vehicle owner" would prior to Miranda's

---

7. Texas courts allow civil actions for negligent maintenance to stand and review the merits of dispositive motions filed in them. *See, e.g.*, *Sanders v. NAES Cent., Inc.*, 498 S.W.3d 256 (Tex. App.—Houston [1st Dist.] 2016, reh'g denied, 498 S.W.3d 256 (Tex. App.—Houston [1st Dist.] 2016)); *Thoele v. Tex. Dep't of Crim. Justice*, No. 10-18-00249-CV, 2020 Tex. App. LEXIS 10175, 2020 WL 7687864 (Tex. App.--Waco [10th Dist.] Dec. 22, 2020, no pet.) (mem. op.); *Rios Pina v. Sun Loans*, No. 04-20-00336-CV, 2021 Tex. App. LEXIS 6223, 2021 WL 3377600 (Tex. App.—San Antonio [4th Dist.] Aug. 4, 2021, pet. filed) (mem. op.); *Bond v. Otis Elevator Co.*, 388 S.W.2d 681, 682 (Tex. 1965) (allowing a negligent maintenance claim to proceed); *Self v. W. Cedar Creek Mun. Util. Dist.*, No. 12-20-00082-CV, 2021 Tex. App. LEXIS 66, 2021 WL 56213 (Tex. App.—Tyler [12th Dist.] Jan. 6, 2021, no pet.) (mem. op.).
8. Danny Herman cites *FFE Transp. Servs. v. Fulgham* for the proposition that pleading a negligent maintenance case requires a plaintiff "to show that the maintenance performed on a vehicle was below the standard of care required and that the subpar maintenance proximately caused the [plaintiff's] injuries." (Doc. 9 at 5–6 (citing *FFE Transp. Servs. v. Fulgham*, 154 S.W.3d 84, 90–93 (Tex. 2004)). While such a statement may eventually be found by Texas state courts to represent the applicable duty of care in an independent negligent maintenance cause of action, utilizing this case as support for such a proposition is patently edentulous. As Villegas correctly notes, the cited portion of *Fulgham* does not delineate any idiosyncratic standard for a negligent maintenance cause of action, but rather discusses only the efficacy of expert testimony for an existing standard of care in the industry proffered at the trial court level. (Doc. 10 at 3–4). Accordingly, without guidance on the issue by Texas state courts, the undersigned will proceed to analyze Danny Herman's claims against Villegas as presenting issues of ordinary common law negligence.

operation of it. (Docs. 1 at 5; 9 at 5). Danny Herman further alleges that Villegas breached this duty by failing to maintain the tires of the Honda CR-V in as sufficiently a safe condition as "required to operate on a highway" and furthermore "allowing the subject Honda CR-V to be driven in such an unsafe condition." (Docs. 1 at 4; 9 at 5). Danny Herman additionally claims that the operation of the Honda CR-V with purportedly "bald" tires left foreseeable the possibility that Miranda and the Honda CR-V "could have a traction issue" in poor weather conditions, resulting in "loss of control." (Docs. 1 at 4–5; 9 at 5). The resulting accident, Danny Herman alleges, led to the damage to Danny Herman's trucking equipment, disruption of business, loss of use. (Doc. 1 at 6).

Villegas asserts in her Reply that the Original Complaint does not provide enough factual assertions regarding Villegas's acts or omissions concerning the maintenance of the Honda CR-V's tires. (Doc. 10 at 2–3). Villegas continues to attack the negligence claim by estimating the Original Complaint to lack facts indicating that a failure to maintain the Honda CR-V's tires proximately caused the accident or, consequently, the damages Danny Herman claims. *Id.* at 4. Villegas then disputes whether, under Texas law, a co-owner of a personal vehicle has a duty to maintain the vehicle. *Id.* at 3. Even if such duty exists, Villegas argues, Danny Herman has not adequately pled facts that Villegas's "maintenance of the Honda [CR-V's] tires was subpar or below the standard of care." *Id.* at 4.

Villegas at no point attempts to counter the presence of the damages that Danny Herman claims, and for the purposes of this Report and Recommendations, are uncontested. Thus, if a legal duty to maintain the Honda CR-V was attributable to Villegas, in order to survive the Motion to Dismiss, Danny Herman must have only pled sufficient facts to indicate that Villegas breached that duty, and that the collision and resulting damages were proximately caused by said breach. *Cf. Boston Heart Diagnostics Corp. v. Harmonyx Diagnostics, Inc.*, No. 4:15-cv-378, 2015 U.S. Dist. LEXIS 179465, at *15, 2015 WL 11118107, at *6 (E.D. Tex. Sept. 23, 2015) (declaring that, because the dismissal movant did not address two of three factors necessary to survive a motion to dismiss,

"[t]he court will . . . assume that factors two and three are uncontested and adequately pleaded"). The threshold question therefore is twofold: (1) does a co-owner of a personal automobile to be operated on a public roadway have a duty to maintain said vehicle?; and if so, (2) has Danny Herman adequately pled facts indicating that Villegas breached this duty? The first sub-question is a question of law for the Court, and appears to have been unaddressed by Texas state courts. *See Praesel v. Johnson*, 967 S.W.2d 391, 394 (Tex. 1998).

The undersigned finds that Danny Herman's Original Complaint contains sufficient allegations to state a plausible claim for relief under a claim of negligence. Villegas's primary point of contention on the question of the existence of a legal duty to maintain a personal vehicle is that she, as a co-owner, has not been shown to possess any such duty. (Doc. 10 at 3, 3 n.1). Regarding the existence of a duty, the undersigned holds that there indeed exists a general duty of an owner of a personal vehicle to maintain the vehicle as would an ordinary, prudent person prior to allowing it to be driven on public roads.[9] Even a cursory inspection of existing law reveals that courts have routinely held sole owners of motor vehicles liable for negligent maintenance. *See, e.g.*, *Machado v. Dyer*, No. SA-20-CV-00193-FB, 2021 U.S. Dist. LEXIS 87635, 2021 WL 1840916 (W.D. Tex. May 7, 2021) (reaching the merits of a negligence lawsuit under Texas law on summary judgment involving a trucking company as the sole owner for the collision vehicle), *report and recommendation adopted*, No. SA-20-CA-193-FB, 2021 U.S. Dist. LEXIS 218188, 2021 WL 5195815 (W.D. Tex. May 27, 2021); *see also McClure v. Greater San Antonio Transp. Co.*, No. SA-08-CA-112-FB, 2008 U.S. Dist. LEXIS 130468, 2008 WL 11335003 (W.D. Tex. Sept. 25, 2008) (adjudicating a negligent maintenance claim on a motion for summary judgment

---

9. If Villegas is the *sole* owner of the Honda CR-V, the undersigned observes that there would indubitably exist a state law duty to maintain one's vehicle for roadworthiness prior to allowing its operation on public roadways. Since the undersigned in evaluating the Motion to Dismiss must accept all alleged facts as true, the allegation of Villegas's ownership of the Honda CR-V opens the liability floodgates for negligence; Villegas's asserted co-ownership claim therefore is insufficient to dam this case and safeguard Villegas from potential liability.

concerning the subject vehicle's worn and underinflated tires), *report and recommendation adopted*, No. SA-08-CA-112-FB, 2009 U.S. Dist. LEXIS 146376, 2009 WL 10670097 (W.D. Tex. Mar. 24, 2009).

Consequently, the undersigned further holds that this general duty is not eradicated by the presence of a co-owner on the vehicle—in such instance, each co-owner subsumes the duty. Assuming *arguendo* that Villegas is in fact a co-owner of the Honda CR-V as opposed to its sole owner,[10] it would subvert all reason to conclude that a co-owner of a vehicle has *no* duty to keep a personal vehicle in proper operating condition before engaging in or permitting its public operation when a sole primary owner is imbued with such a duty. If Villegas's argument is accepted, a sole owner could avoid all means of negligence liability and entirely circumvent any need to perform upkeep on an automobile merely by adding an additional owner to the vehicle. This predicament lies at the nadir of equity, and cannot be the conclusion which would be reached by Texas courts, were one to address the issue. *See Griffith v. Mt. Carmel Medical Ctr.*, 831 F. Supp. 1532, 1542 n.9 (D. Kan. 1993) (rejecting an argument the "logical end" of which would have such undesirable effects as encouraging deliberate actions taken by otherwise negligent parties "for the express purpose of avoiding liability").

In any event, the undersigned believes it important to underline that the standard of review for the Motion to Dismiss does not require that Danny Herman to expressly allege facts establishing each element of a prima facie case of negligence, contrary to Villegas's perspective. *Rivera v. United States*, No. EP-15-CV-00021-KC, 2015 U.S. Dist. LEXIS 127078, at *9–*10, 2015 WL 5608113, at

---

10. As noted, Villegas propounds the notion that it is unclear whether co-owners can be held liable, presumably as an extension of Danny Herman's proffered premise that a sole owner of an automobile can be liable for negligent maintenance. (Doc. 10 at 3). It does not appear Texas courts distinguish between sole owners and co-owners of an automobile in negligence cases. In the few instances where courts have made a point of co-ownership in negligence cases, they have tended to involve breaches of duties based upon negligence committed by a joint enterprise. *See, e.g.*, *Granado v. Dillard Dep't Stores, Inc.*, No. 13-04-030-CV, 2005 Tex. App. LEXIS 7143, at *7–*8, 2005 WL 2090901, at *2–*3 (Tex. App.—Corpus Christi [13th Dist.] Aug. 31, 2005, pet. denied) (mem. op.).

*3 (W.D. Tex. Sept. 22, 2015) (rejecting a proposed heightened pleading standard suggesting that every element of a negligence cause of action must be plead) (citing FED. R. CIV. P. 8(a)(2)); (*see* Doc. 10 at 4 (implying that Danny Herman was required to provide the Court with the "purported elements of a 'negligent maintenance' cause of action")). Thus, the undersigned holds that Danny Herman did not need to definitively state in the Original Complaint that Villegas's presumed status as a co-owner of the Honda CR-V could still implicate liability for failure to properly maintain the roadworthiness of the vehicle under Texas law, and that this purported omission has a negligible effect on the analysis.

Given the undersigned's affirmative conclusion regarding a co-owner's duty to maintain a vehicle as would a prudent and ordinary person, disposing of the second sub-question comes with notable ease. The undersigned finds that the Original Complaint does indeed contain sufficient allegations to state a plausible breach of Villegas's duty as a co-owner of the Honda CR-V. Danny Herman alleges that Villegas, as co-owner, let the Honda CR-V's tires wear down to the point of being "bald," wherefrom foreseeable traction issues could develop, leading a driver of the vehicle to lose control. (Doc. 1 at 4–5). These imperfections, Danny Herman claims, were so ostensible that a "very basic visual inspection" would have notified a reasonable and prudent person of the lack of roadworthiness of the Honda CR-V. (Doc. 1 at 1). Assuming the allegations concerning the tires and the heightened traction potential are true, as well as the additional assertion that Villegas deliberately authorized Miranda to operate the vehicle, the undersigned finds that the permitted neglect of the tires and the Honda CR-V's subsequent authorized operation of the vehicle on a public roadway states a plausible claim for relief based upon a theory of negligent maintenance. The Original Complaint accompanies more than a mere recitation of the elements of negligence, containing several factual allegations which support Danny Herman's negligence cause of action.

With the threshold question decided, the undersigned turns to the remaining question of causation. On this point as well, the undersigned finds that the Original Complaint pleads sufficient

facts to state a plausible proximate cause of Danny Herman's damages. Danny Herman alleges that it is reasonably foreseeable that allowing the operation of an automobile with "bald" tires "with no tread" could cause a loss of traction in poor weather and road conditions. (Doc. 1 at 1, 4). Further, the Original Complaint includes assertions that a reasonable and prudent person would, after a "very basic visual inspection," realize that the Honda CR-V was unsafe to operate on a public highway, which if true imputes to Villegas the element of factual causation. (Doc. 1). Taking these allegations as true, Danny Herman's claims indicate that Villegas's actions and omissions proximately caused the collision between the Honda CR-V and Danny Herman's tractor-trailer on Interstate 10. Therefore, the undersigned finds that the Original Complaint contains sufficient facts to sustain Danny Herman's negligence cause of action.

Danny Herman has specified facts illustrating Villegas's negligent acts and omissions in maintaining the Honda CR-V's roadworthiness prior to authorizing its operation on public roadways. Accordingly, the undersigned **RECOMMENDS** that Villegas's Motion to Dismiss be **DENIED**. (Doc. 6). The undersigned further **RECOMMENDS** that Villegas's Motion for Judgment be **DENIED**. (Doc. 6).

## IV. RECOMMENDATION

For the reasons stated above, the undersigned **RECOMMENDS** that Villegas's Motion to Dismiss be **DENIED**. (Doc. 6).[11]

Further, the undersigned **RECOMMENDS** that Villegas's Motion for Judgment be **DENIED**. (Doc. 6).

SIGNED this 25th day of January, 2022.

_____
DAVID B. FANNIN
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND RIGHT TO APPEAL/OBJECT

In the event that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested. Pursuant to 28 U.S.C. § 636(b), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Judge. A party filing objections must specifically identify

---

11. Danny Herman has alternatively requested leave to amend the Original Complaint pursuant to Federal Rule of Civil Procedure 15. (Doc. 9 at 5–6). Since the undersigned recommends that Villegas's motions be denied, and concludes that Danny Herman's Original Complaint adequately pleads a common law negligence cause of action against Villegas, it follows that Danny Herman's request for leave need not be adjudicated.

those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the U.S. Magistrate Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).